609 So.2d 847 (1992)
Brian BRIMMER
v.
A. COPELAND ENTERPRISES, INC. d/b/a Popeyes Famous Fried Chicken and Biscuits.
No. 92-CA-413.
Court of Appeal of Louisiana, Fifth Circuit.
October 27, 1992.
Rehearing Denied January 20, 1993.
*848 Robert Angelle, Metairie, for defendant-appellant.
Marlin N. Gusman, New Orleans, for plaintiff-appellee.
Before BOWES, GRISBAUM and CANNELLA, JJ.
GRISBAUM, Judge.
This appeal arises out of a malicious prosecution action. We reverse and set aside.
The pivotal question presented is whether the trial court erred, as a matter of law, in its finding that the defendant's employees acted in reckless disregard for the truth.

FACTS
On October 13, 1985, the Popeyes Restaurant on Veterans Highway in Metairie, Louisiana, was robbed at gunpoint by two black men. The robbery occurred after the store had closed for the night but while employees were cleaning up. The manager, Ms. Diane Stappers, called police who arrived shortly thereafter. She and other employees gave police information on the robbery.
Approximately 12 hours later, around noon on October 14, 1985, plaintiff, Mr. Brian Brimmer, entered the Popeyes Restaurant and ordered lunch. Ms. Stappers and another employee who had been present at the previous night's robbery noted the plaintiff's resemblance to one of the robbers and became alarmed. Ms. Stappers called the police, who arrived and arrested Mr. Brimmer.
Sometime around December, Mr. Brimmer learned the charges against him had been dropped. He then sued A. Copeland Enterprises, Inc. for malicious prosecution and defamation. After a judgment in his favor, defendant has appealed.

ANALYSIS
We are well guided by our jurisprudence, which provides that
the elements of a malicious prosecution action are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such [a] proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to the plaintiff.
Jones v. Soileau, 448 So.2d 1268, 1271 (La. 1984) (citing Eusant v. Unity Indus. Life Ins., 195 La. 347, 351-52, 196 So. 554, 556 (1940)). "The crucial determination [in a malicious prosecution action] in regard to the absence of probable cause is whether the defendant had an honest and reasonable belief in the guilt of the plaintiff at the time charges were pressed." Stark v. Eunice Superette, Inc., 457 So.2d 291, 293-94 (La.App. 3d Cir.1984), writ denied, 461 So.2d 316 (La.1984) (citation omitted).
Additionally, our jurisprudence provides the following guidelines in determining whether a malicious prosecution action will lie:

*849 (1) Reasonable efforts by a citizen toward [the] suppression of crime, even where a simple mistake exists, do not automatically impose civil liability [for false imprisonment or malicious prosecution], if all the circumstances indicate the efforts were reasonable. The law should, and does, encourage citizens to report suspected criminal activity to the proper authorities.
Sapp v. J.A. West Co., 352 So.2d 268, 269 (La.App. 2d Cir.1977), writ refused, 353 So.2d 1337 (La.1978) (citation omitted);
(2) If one makes an identification honestly and without malice which is the basis for the arrest of another, the person arrested is not entitled to an award of damages when it is subsequently discovered that a mistaken identification has been made. Roche v. Aetna Casualty & Surety Co., 303 So.2d 888 (La.App. 1st Cir.1974), writ refused, 307 So.2d 372 (La.1975);
(3) "Malice exists where the charge is made with [the] knowledge that it is false or with reckless disregard for whether it is false or not.... A citizen is not guilty of malice for inaccurately reporting criminal conduct when there is no intent to mislead." O'Conner v. Hammond Police Dep't, 439 So.2d 558, 561 (La.App. 1st Cir. 1983) (citations omitted);
(4) Whether a defendant in a malicious prosecution action had probable cause to make the charge against the plaintiff does not depend merely on the actual state of facts but on the defendant's honest belief of the facts in making the charge. Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2d Cir.1975); and
(5) "A police officer who acts on the good faith identification of a witness has probable cause to act, and he is not guilty of malice even though the witness subsequently recants on the identification." O'Conner, supra, at 561.
The record contains the following testimonial evidence:

RHODES
Deputy George M. Rhodes, the arresting officer, testified first. He was a 14-year veteran of the police department. He answered the call made by Ms. Diane Stappers the day following the robbery, and proceeded to the Popeyes Restaurant. Two employees, Ms. Stappers and Ms. Varshaben Shah, advised him that a man whom they believed to be the perpetrator of last night's robbery was in the restaurant, and they identified him to the deputy. He took a voluntary, written statement from Ms. Shah at this time. To his knowledge, the employees did not tell anyone besides him. Deputy Rhodes considered them to be reliable witnesses. Their statements, taken separately of each other, corroborated each other's. Deputy Rhodes stated that eyewitness identification is one of the most reliable sources of information on which to base an arrest, and he based his probable cause to make an arrest on this eyewitness identification.
On cross-examination, Deputy Rhodes said that the defendant was not acting suspiciously and he did not resist arrest. When asked about the identification made by Ms. Stappers and Ms. Shah, he said that he thought they were both absolutely sure of the identification when they made it.

BRIMMER
Mr. Brian Brimmer testified that he is a life-long resident of Hahnville, Louisiana, and is employed at Union Carbide in Taft. He was in Metairie on October 14, 1985, for a doctor's appointment. His account of the arrest substantially corroborated that of Deputy Rhodes. Mr. Brimmer reported that Deputy Rhodes asked him to step outside the Popeyes Restaurant, whereupon the arrest was made out of the presence of the diners in the restaurant. He testified that, after bonding out of jail later that evening, he contacted an attorney, and he decided to leave the entire affair in the attorney's hands. He had no more contact with the Jefferson Parish Police Department. In December, he heard from a co-worker that the charges against him had been dropped.

SHAH
Ms. Varshaben Shah testified next. Even through the sterile, cold, printed record, it is apparent that she was very nervous *850 and quite scared to be testifying in court. Her fear was compounded by the fact that English was her second language. Her problems understanding the questions of the attorneys are apparent throughout her testimony.
She testified that she was working for Popeyes on October 13, 1985. She recalled the robbery that night and the fact that she was afraid during the robbery. When asked about Mr. Brimmer's appearance in the restaurant the next day, she replied that, at this time, she could not recall the events of the next day nor remember how she felt. When shown her statement given at the time of the robbery, she identified it and admitted that it was hers. She testified that Ms. Stappers called the police because, at the time, she thought that Mr. Brimmer could possibly be one of the robbers. She acknowledged that at the time she agreed with Ms. Stappers. When asked again, she said that she thought she believed he was the robber at the time. On cross-examination, she admitted that she had had only a very brief look at the robber. Ms. Shah did not at this time remember any of her deposition testimony.
On re-direct, Ms. Shah stated, "Q: On the day this customer was arrested in the store, was everything you told the police on that day true to the best of your knowledge at that time? A: Yes."

STAPPERS
Ms. Diane Stappers, the manager of the Popeyes Restaurant at the time of the robbery, now lives in California and was unavailable to testify at the trial. Her deposition was admitted into evidence. At her deposition, she said that she was the manager at the Popeyes Restaurant on October 13, 1985. The robbery occurred late at night when the store was already closed. The robbery was committed by two black men. She saw one of them very clearly because he held a gun to her head. At the time she gave the deposition, she said that she did not remember now what he looked like and could not describe him now. The robbery itself was 15-20 minutes long. After the robbery, she called police, and they came and she and the other employees gave them all the information they could, including descriptions of the robbers. About the events of the next day, she testified:
A The next day we saw a gentleman walk into the store. He looked rather suspicious, he kept his sunglasses on, he had approximately the same stature, the same build, the same appearance as the gentleman that had been in the store the night before during the robbery.
Q All right. Which one of the robbers did he resemble?
A He resembled the man that I had beenthat I had seen, that had been standing next to me.
Q Well, which one of the robbers?
A I don't know what you mean. Rephrase the question.
Q Was it the one with the gun or the other one?
A It was the one with the gun.
She recalled that Ms. Shah was also suspicious, stating, "Upon confirming my suspicious [sic] with Varshaben, she indicated to me her strong feelings that this man may be the man in question. We decided to call the police and let them handle the situation so as not to endanger ourselves or the clientele in the restaurant."
Ms. Stappers told police she believed at this time that this gentleman could be the same one that had perpetrated the robbery the night before, stating:
I asked them to please look in[to] this matter, because I believed this could be the man in question, and I told them he had been acting in a suspicious manner and that I had feared for the people in the restaurant, as well as for the staff, the people that were working in the restaurant.
Ms. Stappers was adamant that she did not request the police to arrest Mr. Brimmer but asked them to proceed as they thought best. She stated that her main concern was the safety of her restaurant and her customers, and she trusted the police to proceed as they saw fit. She never heard from the police again, and she did not learn the plaintiff's name until she *851 was asked to give her deposition. When questioned about the robber's physical characteristics, she stated that, while she did not have a present recollection, she remembered that she was certain on the day following the incident (when she identified the plaintiff) all these facts were still clear in her mind. She said that his behavior struck her as suspicious.
As a result of specific questioning, she said:
Q Do you know how tall Mr. Brimmer was?
A At the time that I saw him in the restaurant, he had approximately the same build, the same height and just overall the same appearance as the man that had been in the restaurant the night before.
Q Do youdid you recall at all what it is that you told the police the night that you were robbed?
A I don't recall in detail, but I tried to give them as much information as I could think of, and so did the other employees that were in the store that night.
Q And you said you did get a good look at him?
A Yes, at the time, I did.
And then she also stated:
Considering what had happened the night before, and in light of the fact that he was looking very curiously at the back area as if he were scoping or checking out what the situation were [sic], I felt it best to let the police handle the matter, rather than to in some way endanger the restaurant, jeopardize the lives of the people working there, or become personally involved in this.
Again, she was positive that she let the police decide whether or not to arrest Mr. Brimmer and that she made no recommendations one way or the other.
Ms. Stappers stated that, while she admits she was not absolutely positive that Mr. Brimmer was the robber at the time she identified him, she had good reason to believe that he was one of them. She stated that she acted according to the Popeyes policy manual for handling emergency situations in the restaurant, which she said instructed employees to call the police if an emergency situation appeared about to develop.
Ms. Stappers reiterated that she got a very good look at the robber during the robbery. The length of time between the robbery and her identification the next day was only around 12 hours. She stated that she was not even aware at the time that plaintiff had been arrested, because Deputy Rhodes escorted him out of the Popeyes and into the parking lot. Both Ms. Stappers and Ms. Shah testified that they had never met and absolutely did not know Mr. Brian Brimmer before he walked into the Popeyes Restaurant on October 14, 1985. Mr. Brimmer also testified that he had never met either of them prior to this incident.

CONCLUSION
In light of the entire record, a number of key elements become apparent. First, the two Popeyes' employees who identified Mr. Brian Brimmer as the robber had never met him before and had no personal interest in his arrest. Ms. Diane Stappers testified she did not encourage the police to make his arrest and left it up to their rightful discretion. She, likewise, admitted she had a very good look at the robber on the night before and testified that Mr. Brimmer's physical description closely matched that of the robber's. At this point in the proceedings, we specifically note that plaintiff's counsel failed to show that the two identifying employees either lied or tried to mislead the police in any fashion whatsoever. Moreover, plaintiff's counsel failed to show that Mr. Brimmer's description was so unlike that of the robber's as to make the resulting identification an unreasonable one. In hindsight, their identification was incorrect. However, there has been absolutely no showing that Ms. Stappers and Ms. Shah acted unreasonably in their efforts to identify a man who might have perpetrated the robbery. The fact that both women's testimony, during trial and at depositions, was later less certain, does not, we find, serve to defeat their good faith belief in their identification at the time they made it. The record shows that Ms. Stappers was firm at the time she made the identification of Mr. Brimmer and that she truly believed he might be one of *852 the men who robbed her store. Here, again, plaintiff's counsel, on cross-examination of these witnesses, simply failed to show malice or reckless disregard for the truth. Ergo, we conclude that Ms. Stappers and Ms. Shah were acting as reasonable citizens in their efforts to identify criminal activity and to further justice. See Arellano v. Henley, 357 So.2d 846 (La. App. 4th Cir.1978); Roche v. Aetna Casualty & Surety Co., supra; Tillman v. Holsum Bakeries, Inc., 244 So.2d 681 (La.App. 4th Cir.1971), writ refused, 258 La. 352, 246 So.2d 199 (1971).
We are ever mindful of our "manifest error" standard of review. Rosell v. Esco, 549 So.2d 840 (La.1989). However, it is overwhelmingly evident that the trial court was manifestly erroneous in finding that the Popeyes' employees acted in reckless disregard of the truth. Although this court regrets, as we are sure Ms. Stappers and Ms. Shah do, that their identification was wrong, and we recognize that Mr. Brimmer was most likely put to great inconvenience and anguish, the bottom line is that the testimony and evidence simply do not support a finding of malicious prosecution. Therefore, we reverse and set aside the trial court's judgment.
For the reasons assigned, the judgment of the trial court is hereby reversed and set aside. All costs of this appeal are to be assessed against the appellee.
REVERSED AND SET ASIDE.