718 So.2d 1068 (1998)
Bruen CRAIG, Plaintiff-Appellee,
v.
Elliott CARTER and Brookshire's Grocery Company d/b/a Super One Foods, Defendants-Appellants.
No. 30625-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1998.
*1069 Hudson, Potts, Bernstein by Jay P. Adams, Monroe, for Defendants-Appellants.
Lavalle B. Salomon, Monroe, for Plaintiff-Appellee.
Before NORRIS, HIGHTOWER, BROWN, CARAWAY and PEATROSS, JJ.
HIGHTOWER, Judge.
Defendant, Brookshire's Grocery Company d/b/a Super One Store, appeals an adverse assessment of liability for malicious prosecution after conduct by plaintiff, Bruen Craig, resulted in the escape of a suspected shoplifter. We reverse.

*1070 FACTS
At around 7:00 p.m., on November 10, 1991, outside of the Super One Food Store in Monroe, three employees, including assistant manager Carter Elliott and produce manager Scottie Crow, physically restrained a suspected female shoplifter when she resisted to the point of biting one of the employees. Craig, a student at Northeast Louisiana University, arrived at the store supposedly to obtain cash in the store's automatic teller machine. He wore a leather military-style jacket exhibiting several patches, including a prominent star and the words "Deputy Sheriff, Ware County."
Carrying his open wallet in one hand, ostensibly to retrieve his ATM card, Craig approached the three men struggling with the woman, declared that he knew the law, and demanded an explanation from the employees. In response, they informed him of the detainee's suspected shoplifting. Still believing the employees' behavior to be abusive, Craig demanded that they release the woman, while informing her he would be a witness if she pursued legal recourse.
Due to his imposing jacket, the open wallet in his hand, and his verbal demands, the store personnel believed Craig to be some form of lawman. Expecting him to arrest the woman, they released her, whereupon she quickly escaped with her husband and three children. When the employees went back inside the store after getting the suspect's license plate number, plaintiff followed in an effort to secure the employees' names. They testified that he appeared agitated, continued "hollering," and "was right in [Elliott's] face" some six inches away. In fact, Craig later admitted saying "Up Your Ass" to Elliott.
When police arrived, the employees related what had transpired. Based upon that information, the officers concluded they had probable cause to arrest Craig in that he had interfered with the normal procedure of apprehending a shoplifter and, also, caused a disturbance at Super One.
Around midnight, city police located plaintiff at the motel complex where he resided. They then questioned Craig, searched his room, and arrested him, before escorting him in handcuffs to the Monroe City Jail to be booked on charges of disturbing the peace and false personation. After being released on bond, he hired an attorney. Upon termination of the assertions against him, he filed this suit alleging false arrest and malicious prosecution.
The trial court found in favor of Craig on the claim of malicious prosecution. This appeal ensued.

DISCUSSION
To prevail in a malicious prosecution claim, the plaintiff must prove six elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding, (2) its legal causation by the present defendant against the plaintiff who was defendant in the original proceeding, (3) a bona fide termination in favor of the present plaintiff, (4) the absence of probable cause for such proceeding, (5) the presence of malice therein, and, (6) damage. Goodman v. Spillers, 28,933 (La.App.2d Cir.12/23/96), 686 So.2d 160, writs denied, 97-0225, 97-0423 (La.03/27/97), 692 So.2d 393, 400. Never favored in our law, a malicious prosecution action must clearly establish that the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent. Johnson v. Pearce, 313 So.2d 812 (La.1975); Terro v. Chamblee, 95-70 (La.App. 3d Cir.07/19/95), 663 So.2d 75, and authorities therein.
Craig appears to have fulfilled the first three requirements. Clearly, his arrest occurred at the instigation of Brookshire's employees. Distinguishing the case at hand from Banks v. Brookshire Brothers Inc., 93-1616 (La.App. 3rd Cir.06/01/94), 640 So.2d 680, we reject defendant's contention that Craig's arrest stemmed solely from a determination by the police rather than any request by the Super One employees. In Banks, the court granted summary judgment in favor of a grocery establishment, finding that the peace officers conducted their own investigation and that the store employees, by simply requesting law enforcement intervention, did not legally cause the plaintiff's prosecution. The present record shows broad reliance on the facts provided by the *1071 store employees and only limited independent inquiry by the police. In point of fact, Craig had departed the premises before the officers arrived at the scene. Thus, causation has been adequately shown along with the City of Monroe's failure to prosecute the matter.[1] The issues on appeal relate to probable cause and malice.

DISTURBING THE PEACE
Probable cause depends not merely upon the actual state of the facts in the case, but upon the defendant's honest belief of the facts when making the charge against the plaintiff. Culpepper v. Ballard, 344 So.2d 110 (La.App. 2d Cir.1977); Whittington v. Gibson Discount Center, 296 So.2d 375 (La. App. 2d Cir.1974). The crucial determination is whether the defendant had an honest and reasonable belief in the guilt of the plaintiff at the time charges were pressed. Brimmer v. A. Copeland Enterprises, Inc., 609 So.2d 847 (La.App. 5th Cir.1992), writ denied, 616 So.2d 682 (La.1993), and authorities therein.
In deciding that no probable cause existed for Craig's arrest for disturbing the peace under Monroe ordinance 12-153,[2] the trial court cited the lack of store patron testimony showing how Craig's actions disturbed the customers, the failure of Elliott to state that Craig's actions "caused him to get in a condition where he was ready to retaliate by ... violence of physical actions toward Mr. Craig," and that court's view that Elliott's position imposed upon him the same high standard of restraint demanded of police officers. We find these determinations to be manifestly erroneous.
The evidence shows that Craig followed the employees back into the store, while continuing to angrily and loudly lambast at least one of the managers with profanity, even after the alleged shoplifter's release. The trial court found that "there was some sort of confrontation between [Elliott] and Craig," and that "Mr. Craig was in [h]is face...." Because the incident occurred during business hours in a public place, it is reasonable to believe that customers "foreseeably" would be alarmed and disturbed by Craig's actions. See State v. Jordan, 369 So.2d 1347 (La.1979), approving an interpretation of the identical pertinent language in Garner v. State of Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961), to encompass "conduct which is violent and boisterous in itself, or which is provocative in a sense that it induces a foreseeable physical disturbance."
Further, in that the relevant inquiry concerns foreseeability, the trial court erred in insisting upon customer testimony as to the extent they were actually disturbed. The same is true of Elliott's failure to retaliate or to testify concerning his consideration of retaliation. The statute or ordinance creates culpability for profane language that has a tendency to incite an ordinary addressee to retaliatory action, and does not demand a showing that such actions or thoughts actually transpired. Upon applying the correct criterion, we find the language portrayed here and Craig's obstreperous behavior provided *1072 ample probable cause for arrest under Section 12-153.[3]
Finally, in this regard, Elliott can be subjected to no higher standard of restraint than that of an "ordinary addressee." Although the law expects a police officer to exercise an elevated level of restraint, see State v. Barge, 444 So.2d 735 (La.App. 2d Cir.1984), writ denied, 446 So.2d 1229 (La.1984); Norrell v. City of Monroe, 375 So.2d 159 (La. App. 2d Cir.1979), no such scale exists for a store manager or his employees. Here again, when measured by the appropriate standard, Craig's actions and words would certainly tend to incite an ordinary reasonable addressee, who could understandably conclude that a breach of peace had occurred.
Thus, having failed to establish the absence of probable cause as indicated, plaintiff cannot prevail with respect to the disturbing the peace portion of his case. Nor, in that regard, is it necessary to address the element of malice.

FALSE PERSONATION
False personation is the impersonating of a public officer or the assuming, without authority, of any uniform or badge by which such officer is lawfully distinguished, or performing any act purporting to be official in such assumed character, with the intent to injure or defraud or to obtain or secure any special privilege or advantage.
Importantly, once more, the crucial determination regarding probable cause does not hinge upon the sufficiency of the evidence to convict, see Tabora v. City of Kenner, 94-613 (La.App. 5th Cir.01/18/95), 650 So.2d 319, writ denied, 95-0402 (La.03/30/95), 651 So.2d 843, but upon whether the malicious prosecution defendant honestly and reasonably believed in the guilt of the plaintiff at the time of initiating the charges. Brimmer, supra. The Constitution does not guarantee that only the guilty will be arrested. Tabora, supra; Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).
The trial court specifically found in the present case that, because the Super One employees knew Craig not to be a police officer when they agreed to have him arrested, no probable cause existed. This reasoning goes wide of the mark, however. The crime of false personation routinely will concern an offender who is not an officer. Indeed, that is the gravamen of such a complaint; had Craig been a police officer, he could not have impersonated one. Thus, the initiating party should perforce make precisely that determination, viz, that the accused is not an officer. Yet based on that essential ascertainment here, the trial court erroneously negated probable cause.
Properly, the crucial inquiry concerned whether the Super One employees, at the time of their complaint, honestly and reasonably believed that Craig intended to secure an advantage by acting or assuming the character of a law enforcement officer. The evidence shows they did. Craig's appearance at the scene wearing a leather, law officer-style jacket containing at least one star patch with the bold words "Deputy Sheriff, Ware County," and exhibiting his open wallet while yelling in an authoritative voice for the employees to release the woman, could reasonably lead the store employees to the belief, even in retrospect, that Craig purposefully acted like a law enforcement official. This is certainly true from the vantage point of personnel awaiting police assistance in the execution of their duties. At no point in time did Craig acknowledge, to the employees, that he was not a law enforcement officer. Indeed, the trial court found that the employees "believe[d] that he was... by looking at the patch and seeing the wallet in his hand ... an officer at that time."
Furthermore, the store personnel's firm belief in Craig's apparent authority is obvious in the fact that they released the accused shoplifter. The evidence also adequately *1073 demonstrates the basis for the employees to believe honestly, still in hindsight, that Craig sought to gain a special privilege, namely the release of the offender. Notably, he had cited his knowledge of the law when first confronting these individuals.
Even if both Craig and the store personnel found themselves in the web of a simple mistake, it does not follow that an action for malicious prosecution will lie.
Reasonable efforts by a citizen toward [the] suppression of crime, even where a simple mistake exists, do not automatically impose civil liability [for false imprisonment or malicious prosecution], if all the circumstances indicate the efforts were reasonable. The law should, and does, encourage citizens to report suspected criminal activity to the proper authorities.
Sapp v. J.A. West Co., 352 So.2d 268, 269 (La.App. 2d Cir.1977), writ denied, 353 So.2d 1337 (La.1978). Such policy considerations gain marked relevance where an aggressive citizen, despite ultimately violating no law, pushes his "good Samaritan" role to the outer limits.
While in no way eliminating his legal protections, Craig's actions on this occasion and his three earlier arrests[4] for disturbing the peace serve to undermine any claim of "complete innocence," and thereby his damage demands against individuals responding more in reaction than in "`willful oppression of the innocent,'" Johnson, supra, 313 So.2d, at 816, quoting ultimately from Staub v. Van Benthuysen, 36 La. Ann. 467 (1884). Balancing the encouragement of citizen suppression of crime against the unfavored status of malicious prosecution claims, and considering Craig's deportment in interrupting the store personnel's lawful detention duties, plaintiff has not shown that defendant's employees acted without probable cause in reporting that Craig impersonated an officer. Regarding malice, we again do not reach that aspect of the matter.
Moreover, even assuming liability arguendo, Craig did not succeed in proving the damages arising from the false personation charge. As previously discussed, his arrest for disturbing the peace cannot be said to lack probable cause. Consequently, with plaintiff having described his claimed damages as arising from the "incident" and failing to make a distinction in the wrongs suffered, any demonstrated stress or embarrassment would have occurred irrespective of the additional charge.

CONCLUSION
For the foregoing reasons, the trial court manifestly erred in assessing liability for malicious prosecution based upon Craig's arrest for disturbing the peace and false personation. Accordingly, at plaintiff's cost, we reverse the judgment granted below.
REVERSED AND RENDERED.
NORRIS and BROWN, JJ., dissents.
NORRIS, Judge, dissenting.
In this admittedly close case, I would affirm the judgment of the trial court.
BROWN, Judge, dissenting.
The trial court was not unreasonable in finding for plaintiff.
NOTES
[1] The record leaves unclear whether the city failed to initiate proceedings against Craig or, in fact, dismissed charges against him. Nothing even shows the filing of either a bill of information or an affidavit charging plaintiff, which some courts have held is necessary for proof of malicious prosecution. See, e.g., Edmond v. Hairford, 539 So.2d 815 (La.App. 3rd Cir. 1989). Nevertheless, inasmuch as defendant recognizes that the first three elements have been satisfied, we accept that concession for purposes of this discussion. Still, the record does not permit Craig, nor does he attempt, to avail himself of the presumption of lack of probable cause and malice that accompanies a showing of dismissal. See Carter v. Catfish Cabin, 316 So.2d 517 (La. App. 2d Cir. 1975); Robinson v. Rhodes, 300 So.2d 249 (La.App. 2d Cir.1974), writ refused, 303 So.2d 178 (La.1974).
[2] In pertinent part that local enactment provides:

Sec. 12-153 Disturbing the peace.
(a) It shall be unlawful to commit an act of disturbing the peace.
(b) Disturbing the peace is the doing of any of the following in a such a manner as would forseeably disturb or alarm the public, or create any dangerous or violent condition:
. . . . .
(2) Using profane or threatening language or making obscene remarks, gestures, or indecent proposals to or toward another which in the manner uttered has a tendency to incite an ordinary addressee to violent retaliatory action and a breach of the peace; or
. . . . .
[3] Moreover, probable cause for arrest clearly existed under La. R.S. 14:103(2) which defines disturbing the peace to include the addressing of any offensive, derisive, or annoying words to any other person who is lawfully in a public place, or making any exclamation in his presence and hearing with the intent to deride, offend, or annoy him or to prevent him from pursuing his lawful business, occupation or duty.
[4] Testimony shows Craig to have been arrested for disturbing the peace on three occasions during his six-year residence in Monroe.