802 So.2d 959 (2001)
Darryl A. KEPPARD
v.
AFC ENTERPRISES, INC., and Jane Doe.
No. 2000-CA-2474.
Court of Appeal of Louisiana, Fourth Circuit.
November 28, 2001.
*961 Anthony L. Marinaro, Frank A. Silvestri, S. Micholle Walker, Silvestri & Massicot, New Orleans, LA, Counsel for Plaintiff/Appellant.
Michael R. Sistrunk, Peter J. Wanek, Lynda A. Tafaro, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, LA, Counsel for Defendant/Appellee.
Court composed of Judge STEVEN R. PLOTKIN, Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY.
STEVEN R. PLOTKIN, Judge.
Plaintiff, Darryl Keppard, appeals the trial court's grant of summary judgment in favor of defendant, AFC Enterprises, Inc., owner of Popeye's Fried Chicken restaurants, and the dismissal of his lawsuit for malicious prosecution involving the conduct of AFC's employee.
On March 9, 1998, a man robbed a Popeye's restaurant in New Orleans by handing the cashier a note instructing her to fill a bag with cash and leaving with an undetermined amount of money. On March 17,1998, eight days after the robbery, Mr. Keppard was arrested at the same restaurant after being detained by a security guard while assistant manager, Karen Cook, contacted the police and identified *962 Mr. Keppard to the police as the perpetrator of the robbery on March 9, 1998.
After his arrest, Mr. Keppard remained in jail for approximately one month.[1] At Mr. Keppard's preliminary hearing on April 8, 1998, the criminal district court found probable cause in the State's case against Mr. Keppard. However, the parties agree that in late May 1998, the district attorney's office dismissed the charges against Mr. Keppard for the robbery at Popeye's. The record contains no information on the dismissal.
On November 28, 1998, Mr. Keppard filed suit against AFC and Jane Doe (presumably the manager who identified him as the robber). In his petition, Mr. Keppard alleged that the manager of Popeye's wrongfully accused him of committing a crime at the restaurant. He further claimed that, while he was detained, another restaurant employee could not identify him as the robber, recognized him as a regular customer, and informed the manager of this information.
Mr. Keppard alleged that AFC, as the manager's employer, was responsible for the manager's actions by which she "maliciously and/or through gross negligence charged [him] with this felony and did not withdraw her accusation causing [his] prosecution to continue." Mr. Keppard claimed to have sustained damages including those "for fear of prosecution, false arrest, wrongful detention and false imprisonment, physical and mental pain and suffering, lost wages while imprisoned and diminished earnings capacity, the costs of a criminal defense, a damaged credit rating for missing credit payments while incarcerated, and humiliation and embarrassment for public notices of arrest and prosecution of the crime."
On December 29, 1999, AFC filed a Motion for Summary Judgment, claiming that it was entitled to judgment as a matter of law in the absence of a genuine issue of material fact and asking that all claims made by Mr. Keppard be dismissed with prejudice. On July 19, 2000, the trial court granted the summary judgment motion in favor of AFC and dismissed Mr. Keppard's lawsuit with prejudice, finding that "there exists no genuine issue of material fact and that [AFC] is entitled to judgment as a matter of law."
Mr. Keppard appeals this judgment.
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 230.
Summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. Code Civ.P. art. 966. Pursuant to amendments to article 966, summary judgments are now favored, and the rules regarding summary judgments are to be liberally applied. La.Code Civ.P. art. 966(A)(2). The amendments leveled the playing field for the litigants, required equal scrutiny of documentation submitted by the parties, and removed the earlier overriding presumption in favor of trial on the merits. Marrogi v. Gerber, XXXX-XXXX(La.App. 4 Cir. 5/16/01), 787 So.2d 1098, writ denied, XXXX-XXXX (La.9/28/01), 798 So.2d 120.
*963 In 1997, article 966 was further amended to alter the burden of proof in summary judgment proceedings. The initial burden of proof remains on the mover to show that no genuine issue of material fact exists. After the mover has met its initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La.Code Civ.P. art. 966(C)(2). If the non-moving party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ.P. art. 966; Schwarz v. Administrators of Tulane Educational Fund, 97-0222 (La.App. 4 Cir. 9/10/97), 699 So.2d 895, 897. When a motion for summary judgment is properly supported, the non-moving party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.Code Civ.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326.
In his first assignment of error, Mr. Keppard argues that the record shows sufficient issues of material fact in dispute concerning the manager's intent and that summary judgment is inappropriate for determinations based on subjective factors such as intent or motive. He claims that the record shows that he was prosecuted solely on the basis of Ms. Cook's misidentification, which had no reasonable basis in fact and in reckless disregard of his rights.
Mr. Keppard claims that the district attorney's office refused the charges against him because Latoya Owens, a cashier at Popeye's who witnessed the robbery, did not identify him as the robber and allegedly told Ms. Cook on the night of his arrest that he was a regular customer and not the robber. Mr. Keppard argues that the recordthe police report, his preliminary hearing transcript, and depositionsfails to establish that Ms. Cook acted without malice.
To the contrary, however, the record supports a finding that Ms. Cook's actions were reasonable and not malicious. In its summary judgment motion, AFC relied solely upon the deposition testimony of Mr. Keppard and Ms. Cook. In opposition, Mr. Keppard explained his unsuccessful attempts to depose Ms. Owens and another witness who purportedly did not identify him and relied upon the depositions, police report, and preliminary hearing. The police report, written by the investigating police officers after the robbery in question, states in pertinent part:
On Tuesday, March 17, 1998, Karen Cook, the store manager, was working when she observed a black male enter the store. Ms. Cook stated she immediately recognized the subject to be the same subject that robbed the store on Monday, March 9, 1998, at 6:25 pm. Ms. Cook further stated that this same subject came back to the store on two other occasion[s], March 13, 1998, at about 7:00 pm. and on March 16, 1998 at about 6:30 pm. Ms. Cook stated on each time that the subject came into the store she recognized the subject as being the same subject that committed the robbery. On March 17, 1998 the security guard, Emily Jones, was able to apprehend the subject after he enter the store. This subject was later identified as Darryl Keppard, black male, date of birth 5-9-59, 919 Lesseps Street.
Detective Cade then interviewed the cashier, LaToya Owens, who was also was (sic) working on the night of the robbery and the time that Keppard was arrested by the security guard.

*964 Ms. Owens stated that the arrested subject comes in the store on a regular bases (sic). Ms. Owens stated she could not say that the arrested subject was the same person that committed the robbery, but he is the right height, same complexion and build of the subject that committed the robbery. Ms. Owens added that the only thing that she can say is difference (sic) from the arrested subject and the subject that she remember[ed] that committed the robbery is the hair in the arrested subject['s] face. Ms. Owens refused to identify the arrested subject.
Detective Cade then reviewed the incident report and noted the similarities in the description of the arrested subject and wanted subject listed in the report.
... After advising Keppard of his rights Keppard stated he did not know anything about any robberies nor was he the one that committed the robbery.
Base[d] on the positive identification made by Ms. Cook and the statement given by Ms. Owens stating that the arrested subject and the subject that committed the robbery had similar characteristic[s], Keppard was charged with the First Degree robbery of Popeye's Fried Chicken that occurred on March 9, 1998.
* * *
Detective Cade and Detective Adams on Tuesday, March 31, 1998 at 1:00 pm met witness, Harry Doughty, in the fifth District Station. At the station Detectives allowed Mr. Doughty to view a photo line-up which included a photo of Darryl Keppard. Mr. Doughty after viewing the line-up stated he did not see the subject that committed the robbery in the line-up.
Mr. Keppard's primary complaint with Ms. Cook's identification is that although she saw no facial hair on him at the time of the robbery, she saw that he had facial hair eight days later when he was arrested. He claims to have had facial hair since before the date of the robbery.
At her deposition, Ms. Cook recounted the instances when she encountered Mr. Keppard, beginning with the robbery in question. She testified that on the night of the robbery she provided a description of the robber to the police and to her employer in a telephone report, which description included that the robber had no facial hair.
Ms. Cook stated that she saw and recognized Mr. Keppard in the restaurant three times after the robbery and was able to have him detained by the restaurant's security guard on the third time. She stated that when she saw him for the third time, she noticed that he had facial hair and was wearing a cap. She also stated that he had facial hair on the night he was arrested. She testified that she got a good look at Mr. Keppard on each of the four occasions she claims to have encountered him.
Ms. Cook denied that the cashier, Ms. Owens, ever told her that Mr. Keppard was not the robber.
We will first address Mr. Keppard's claim that the issues of probable cause and malice are not appropriate for summary judgment. Mr. Keppard relies on jurisprudence from before the amendments to the articles on summary judgment in the Code of Civil Procedure. As the supreme court ruled in Carrier v. Grey Wolf Drilling Co., XXXX-XXXX (La.1/18/01), 776 So.2d 439, 442, the notion that summary judgment is rarely appropriate in cases involving intent must be viewed in the context of the new summary judgment law. Hence, as the supreme court found, summary judgment could be appropriate when intent is at issue if the plaintiff did not demonstrate a factual dispute concerning *965 the defendant's intent. Id. Mr. Keppard's argument in this regard, therefore, is without merit.
"Malicious prosecution is the wrongful institution or continuation of a criminal or civil proceeding." Shepherd v. Williams, XXXX-XXXXX (La.App. 3 Cir. 2/28/01), 780 So.2d 633, quoting Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law, Section 2-6(d) at p. 31 (1996). Although Mr. Keppard did not specifically allege "malicious prosecution" in his petition, his factual allegations regarding his arrest are sufficient to have raised the issue.
To prevail in a malicious prosecution action, the plaintiff must prove the following six elements: (1) the commencement or continuance of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) a favorable termination in favor of the present plaintiff; (4) the absence of probable cause for such a proceeding; (5) the presence of malice and (6) damage conforming to legal standards resulting to the plaintiff. Kelly v. West Cash & Carry Building Materials Store, 99-0102 (La.App. 4 Cir. 10/20/99), 745 So.2d 743, 761; Miller v. East Baton Rouge Parish Sheriffs Department, 511 So.2d 446, 453 (La.1987).
Ordinarily the plaintiff has the burden of proving the absence of probable cause and malice, which are the two elements at issue in this case. Mr. Keppard makes a valid argument that once the district attorney's office dismissed the case against him, this burden shifted to AFC. See Winn v. City of Alexandria, 96-492 (La.App. 3 Cir. 11/20/96), 685 So.2d 281, quoting Robinson v. Rhodes, 300 So.2d 249, 251 (La.App. 2 Cir.), writ refused, 303 So.2d 178 (La.1974), that when the prosecution dismisses a charge, there is a presumption of want of probable cause so that in a malicious prosecution suit, the defendant bears the burden of showing he acted on probable cause and without malice. Therefore, our review will focus upon whether AFC proved that probable cause existed for Mr. Keppard's arrest and that Ms. Cook did not act maliciously.
In Brimmer v. A.Copeland Enterprises, Inc., 609 So.2d 847 (La.App. 5 Cir.1992), writ denied, 616 So.2d 682 (La. 1993), the court set forth several jurisprudential rules applicable in malicious prosecution actions. These include:
(1)Reasonable efforts by a citizen toward [the] suppression of crime, even where a simple mistake exists, do not automatically impose civil liability [for false imprisonment or malicious prosecution], if all the circumstances indicate the efforts were reasonable. The law should, and does, encourage citizens to report suspected criminal activity to the proper authorities....
(2) If one makes an identification honestly and without malice which is the basis for the arrest of another, the person arrested is not entitled to an award of damages when it is subsequently discovered that a mistaken identification has been made....
(3) Malice exists where the charge is made with [the] knowledge that it is false or with reckless disregard for whether it is false or not.... A citizen is not guilty of malice for inaccurately reporting criminal conduct when there is no intent to mislead....
(4) Whether a defendant in a malicious prosecution action had probable cause to make the charge against the plaintiff does not depend merely on the actual state of facts but on the defendant's *966 honest belief of the facts in making the charge.... (Citations omitted.)
609 So.2d at 849.
The crucial determination regarding the absence of probable cause is whether the defendant had an honest and reasonable belief in the allegations he made. Kelly v. West Cash & Carry Building Materials Store, 99-0102 (La.App. 4 Cir. 10/20/99), 745 So.2d 743, 761. In Miller v. East Baton Rouge Parish Sheriffs Dept., 511 So.2d 446, 453 (La.1987), the supreme court defined "malice" as follows:
Malice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to "tie up the mouths" of witnesses in another action, or as an experiment to discover who might have committed the crime. Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights.
Considering these statements of law in light of the record before us, we conclude that AFC, through Ms. Cook, had probable cause to believe Mr. Keppard was the robber and that Ms. Cook did not act maliciously.
Ms. Cook's deposition testimony reveals that she honestly believed Mr. Keppard was the robber. She had ample opportunity to observe the robber, and her identification of Mr. Keppard as the robber was definite and reinforced by several instances of observing him. The question of Mr. Keppard's facial hair is neither significant nor sufficient to cause Ms. Cook's actions to be considered "reckless." The passage of eight days between Ms. Cook's observation of the robber and Mr. Keppard's arrest and the lack of evidence on the extent of the facial hair is critical.
The objective recounting of the incident in the police report bolsters our conclusion that Ms. Cook acted reasonably and reveals that the police also relied upon the cashier's statement that Mr. Keppard and the robber shared similar characteristics. In addition, the criminal district court found probable cause to hold Mr. Keppard for trial. Finally, although the district attorney's office dismissed the case against Mr. Keppard for unknown reasons, the dismissal at most only shifts the burden of proof in this type of case; it creates a presumption of lack of probable cause, but it does not establish an absence of probable cause.
The record also shows that Ms. Cook did not act maliciously. Not only did both Mr. Keppard and Ms. Cook deny knowing or ever seeing each other, but Mr. Keppard specifically testified that he knew no one at the restaurant and had no idea why anyone would want to implicate him in the robbery or harbor ill will toward him such that they would have instigated this incident. There is no evidence that Ms. Cook sought any advantage from this prosecution, intended to mislead, or acted unreasonably.
AFC, therefore, sufficiently proved that there existed no genuine issue of material fact regarding probable cause or malice. Once the burden of proof then shifted to Mr. Keppard, he did not produce factual support to show that he would be able to satisfy his evidentiary burden at trial. He presented nothing more than unsupported allegations. Hence, summary judgment in AFC's favor was appropriate. This assignment of error has no merit.
In his second assignment of error, Mr. Keppard argues that the trial court erred in dismissing his entire case, including claims for causes of action that were not the subject of the motion for summary *967 judgment. He contends that his damage claim for "humiliation and embarrassment for public notice of his arrest and prosecution" stated a claim for defamation, libel, and/or slander.
Even assuming that Mr. Keppard did state a claim of this nature, AFC's motion for summary judgment was clearly not only directed to Mr. Keppard's claim for malicious prosecution. AFC requested dismissal of all claims. Moreover, Mr. Keppard has shown nothing to demonstrate that he would likely be able to meet his burden of proof at trial on any claims in the nature of defamation or false imprisonment. Without such a showing, there is no genuine issue of material fact, and summary judgment is appropriate. See Kelly, supra, 745 So.2d at 755, citing Sassone v. Elder, 626 So.2d 345 (La.1993). This assignment of error has no merit.
In his third assignment of error, Mr. Keppard contends that summary judgment is inappropriate because he has been unable to complete discovery. Specifically, Mr. Keppard was unable to depose Ms. Owens, the cashier, or Mr. Doughty, the other witness to the robbery.
The record shows that the summary judgment hearing was continued several times to allow Mr. Keppard to depose these witnesses and includes a court order for Mr. Doughty to appear for his deposition. The trial court judgment in this matter was rendered eleven months after the first attempt to take these depositions. Moreover, what Mr. Keppard hopes to elicit from these witnessesthat they cannot identify him as the robberdoes not prove that AFC lacked probable cause or that Ms. Cook acted with malice. Such testimony from these witnesses would reveal nothing more than what is already contained in the record. This assignment of error has no merit.
For the reasons given, we find that the judgment of the trial court granting summary judgment in favor of AFC and dismissing Mr. Keppard's lawsuit was correct. The trial court judgment is affirmed.
AFFIRMED.
NOTES
[1] At his deposition, Mr. Keppard stated that the reason he could not get out of jail on bond was because, at the time of his arrest, he had five days left on a probation sentence he was serving.