870 So.2d 1131 (2004)
George HOOKER, Jr., Plaintiff-Appellant,
v.
WAL-MART STORES, INC., Defendant-Appellee.
No. 38,350-CA.
Court of Appeal of Louisiana, Second Circuit.
April 7, 2004.
Rehearing Denied May 6, 2004.
*1132 Street & Street by C. Daniel Street, for Appellant.
McGlinchey Stafford, PLLC by Stephen P. Beiser, New Orleans, for Appellee.
Before WILLIAMS, CARAWAY and MOORE, JJ.
CARAWAY, J.
This case has recently been before this court concerning an award of benefits by the Office of Workers' Compensation to plaintiff for three weeks of disability following a work place injury. Hooker v. Wal-Mart Stores, Inc., 38,244 (La.App.2d Cir.3/3/04), 867 So.2d 869. This district court suit was also instituted in connection with plaintiff's three-week absence from work which resulted in his dismissal from employment. Plaintiff claims his dismissal was in retaliation for his assertions for workers' compensation benefits in violation of La. R.S. 23:1361. Following a motion for summary judgment by the employer, the trial court dismissed plaintiff's suit. Finding that the issue of the employer's motive for the employee's dismissal remains clouded by genuine issues of material fact, we reverse the trial court's ruling and remand for further proceedings.

Facts
George Hooker, Jr. went to work for Wal-Mart stocking groceries at a Monroe Wal-Mart store in 2000. On September 3, 2002, Hooker was working inside a trailer using an electric pallet jack to unload groceries from a delivery truck. While doing so, the equipment malfunctioned causing boxes to fall and the trailer's rear door to come down and strike Hooker on the head. Hooker reported the accident immediately to James Tedleton, the market manager, but alleges that he was denied medical attention until the following day. The next day, Tedleton took Hooker to the North Monroe Medical Center emergency room where he was diagnosed with cervical spine strain, chest wall strain and a minor scalp contusion.
On the day of the accident, Hooker completed a form entitled "Associate *1133 StatementWorkers Compensation" describing the accident. On the following day when he was taken to the doctor, he completed a second form entitled "Workers' Compensation Request for Medical Care" which contained a release authorizing Wal-Mart to obtain copies of Hooker's medical records regarding his occupational injury.
Hooker returned to work on light duty for several days during which the condition worsened. On September 17, 2002, while taking an already scheduled week of vacation, Hooker saw his orthopedist, Dr. Sidney Bailey. Dr. Bailey previously diagnosed Hooker with degenerative changes in his neck and explained that this condition made Hooker more susceptible to injury. Dr. Bailey recommended physical therapy and gave Hooker a note stating, "George Hooker needs to be off work until 10-7-02." Hooker made an appointment to see Dr. Bailey again on October 10, 2002. That day, Hooker took the note to Wal-Mart and gave it to the personnel manager, Sandra Johnson.
On September 20, 2002, Dr. Bailey's office received a fax from Angie Nichols, a case manager with Claims Management, Inc. ("CMI"), Wal-Mart's third-party administrator. The fax stated that Hooker had filed a compensation claim with CMI and asked the doctor to complete an attached temporary alternative duty form and treatment plan and fax it back to CMI "as soon as possible." The fax stated that "Your assistance in this matter will allow the associate to safely recover at work, earn a full wage, and continue to receive benefits."
The September 20, 2002 fax was followed up by a second faxed letter from a nurse at CMI, Eloise Leonard. This fax noted Dr. Bailey's diagnosis of a cervical sprain/strain and stated that Wal-Mart could provide the employee with a modified position under any restrictions the doctor outlined. The letter asked, "What harm could come to Mr. Hooker working within restrictions for a cervical sprain?" The fax also asked the doctor to complete a "work form" outlining specifically the restrictions to be placed on Hooker's work.
On September 25, 2002, Dr. Bailey completed the temporary alternative duty form. He noted on the form that Hooker needed to alternate sitting and standing, could not work on a ladder and could not reach over his head or work over his shoulders. The doctor could not explain what prompted him to change his recommendation from "no work until October 7" to light-duty work, but confirmed that he did not re-examine Hooker before doing so. Dr. Bailey testified that is was unusual that he responded so promptly to this request and that "some level of urgency" must have been communicated to him. He speculated that these circumstances prompted the amended recommendation.
Dr. Bailey completed another temporary alternative duty form on October 7, 2002, again indicating Hooker's work restrictions.
Hooker testified in his deposition that he was not informed of this new light duty recommendation by the doctor's office. Dr. Bailey did not know whether Hooker was notified of this information or even aware that communications occurred.
On September 25, 2002, Wal-Mart notified Hooker that he should return to work. When he called CMI, Angie Nichols informed him of his doctor's revised recommendation as to his work status. She also informed him that he would be paid one day of workers' compensation benefits, after which he was authorized to return to work.
Thereafter, Hooker went into Wal-Mart where a manager, Derek Blue, and another *1134 employee, Mary Edmonson, told him his doctor released him to light duty and that Wal-Mart had a light-duty job for him. He testified that while he was shown Dr. Bailey's note of September 25, 2002, he did not believe it was accurate because he had not seen the doctor since September 17, 2002. Although Hooker initially agreed to return to light duty work the following day, he changed his mind and told them he would not return to work until October 7, 2002, as originally recommended by Dr. Bailey. Hooker was afraid that he would be ordered to do heavier work because before, while he was on "light duty" for an earlier accident, he was suspended for refusing to follow an order.
Hooker heard for the first time that Wal-Mart terminated him while attending physical therapy. He received correspondence from Wal-Mart dated October 1, 2002, informing him that he had been terminated for failing to report to work on September 26, 27, 28, 29 and 30. On October 7, 2002, Hooker reported back to work at Wal-Mart and was again informed that his employment was terminated.
Hooker returned to Dr. Bailey on October 10, 2002. The doctor released Hooker to full duty then and recommended additional physical therapy. Dr. Bailey said that while most of the therapeutic exercises could be done at home, others require a therapist. Dr. Bailey's records showed Wal-Mart refused payment for the additional therapy.
In addition to claims for workers' compensation and unemployment benefits, Hooker filed the instant suit on October 8, 2002, claiming that he was discharged in retaliation for filing a workers' compensation claim in violation of La. R.S. 23:1361. Wal-Mart moved for summary judgment alleging that there was no genuine issue of material fact based upon the deposition testimony of Dr. Bailey and Hooker.
Hooker opposed the motion and submitted the transcript of the workers' compensation judge's ("WCJ") ruling. The WCJ found that Hooker had suffered an injury at work and that Dr. Bailey's release of Hooker to light duty work was not based on any change in his condition, but "on whatever information was provided to him by the representative of the employer." The WCJ concluded that the employer had improperly contacted Dr. Bailey in violation of La. R.S. 23:1127,[1] and further had *1135 improperly discussed Hooker's medical history with an unauthorized person, his cousin. The WCJ awarded Hooker temporary total disability benefits.[2]
The trial court granted Wal-Mart's motion for summary judgment and dismissed Hooker's suit with prejudice. Hooker now appeals.

Discussion
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action except those disallowed by law. La. C.C.P. art. 969. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(1-2). After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966(C)(1). A fact is material if its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Curtis v. Curtis, 28,698 (La.App.2d Cir.9/25/96), 680 So.2d 1327. The burden of proof remains with the mover unless he would not bear the burden at the trial of the matter before the court on the motion for summary judgment. La. C.C.P. art. 966(C)(2).
When a motion for summary judgment has been properly made and supported, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967.
In determining whether a fact is material, we must consider the substantive law governing the litigation. Plaintiff's claim for retaliatory discharge is based on La. R.S. 23:1361 which provides in pertinent part:
B. No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.
C. Any person who has been denied employment or discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer or prospective employer *1136 who has violated the provisions of this Section a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination based upon the starting salary of the position sought or the earnings of the employee at the time of the discharge, as the case may be, but not more than one year's earnings, together with reasonable attorney's fees and court costs.
The purpose of the statute is "to prevent unjust dismissals and to allow employees to exercise their right to workers' compensation benefits without fear of retaliatory action by their employers." Ducote v. J.A. Jones Construction Co., 471 So.2d 704, at 707 (La.1985). Even so, the employee bears the burden of proving by a preponderance of the evidence that he was terminated for that reason. Lewis v. Willamette Industries, Inc., 537 So.2d 780 (La.App. 2d Cir.1989), writ denied, 540 So.2d 331 (La.1989). When the employer offers another justification in connection with firing a workers' compensation claimant, the trial court must ascertain the employer's true reason or motive based on the facts presented. An employer cannot circumvent the statute by stretching the facts out of context or inventing an excuse for firing a compensation claimant. Lewis, at 783.
The trier-of-fact's function in a retaliatory discharge claim such as this is to ascertain the true motive for the employee's discharge. King v. Career Training Specialists, Inc., 35,050 (La.App.2d Cir.9/26/01), 795 So.2d 1223. Even though the summary judgment procedure is favored, it is not a substitute for trial and is often inappropriate for judicial determination of subjective facts such as motive, intent, good faith or knowledge. Harrison v. Parker, 31,844 (La.App.2d Cir.5/5/99), 737 So.2d 160, writ denied, 99-1597 (La.9/17/99), 747 So.2d 565. One reason is that these subjective facts call for credibility evaluations and the weighing of testimony. Oaks v. Dupuy, 32,070 (La.App.2d Cir.8/18/99), 740 So.2d 263. Additionally, the circumstantial evidence usually necessary for proof of motive requires the trier-of-fact to choose from competing inferences, a task not appropriate for a summary judgment ruling.
In the instant case, the only evidence both supporting and opposing the motion for summary judgment was the deposition testimony of the claimant and Dr. Bailey and the WCJ's findings. After our review of this evidence, we believe the circumstances surrounding Hooker's discharge establish a genuine issue of fact precluding summary judgment.
There are two facts that weigh against Wal-Mart in this matter. First, the WCJ determined that Hooker was disabled and entitled to workers' compensation wages benefits when Wal-Mart fired him. That ruling has been affirmed by this court. Second, in accordance with La. R.S. 23:1127, Wal-Mart's case manager did not provide Hooker a "written summary" or "narration" of Dr. Bailey's "diagnosis or opinion" which was purportedly obtained by the case manager in communications with Dr. Bailey. One purpose of this statute is to avoid the misunderstandings and bruised feelings which the employee might experience from an informal discussion of his medical condition by the employer or case manager. Instead, the case manager is first required to document the communication received from the employee's doctor regarding the employee's reasonable return to employment. When such written documentation is furnished to both the employee and the doctor, the employee may privately review the report and discuss and verify its content with his health care provider.
*1137 Wal-Mart's decision to fire Hooker was therefore reached through an improper procedure in clear violation of the workers' compensation laws. The employee's reaction to Wal-Mart's violation of the law served as Wal-Mart's justification for the firing. Whether Wal-Mart acted in error or with a retaliatory motive for Hooker seeking workers' compensation benefits is for the trier-of-fact to decide from the circumstantial evidence of this case. Accordingly, the trial court's grant of summary judgment was in error and is reversed. Costs of this appeal are assessed against Wal-Mart.
REVERSED AND REMANDED.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, CARAWAY, PEATROSS, and MOORE, JJ.
Rehearing denied.
NOTES
[1] La. R.S. 23:1127 provides:

A. It is the policy for the efficient administration of the workers' compensation system that there be reasonable access to medical information for all parties to coordinate and manage the care for the injured worker and to facilitate his return to work.
* * *
C. (1) Consistent with the policy of reasonable access to medical information for all parties and notwithstanding the provisions of Article 510 of the Louisiana Code of Evidence or any other law to the contrary, a health care provider, without the necessity of a subpoena or other discovery device, shall verbally discuss medical information regarding the injured employee with another health care provider examining the employee, a case manager, or a vocational rehabilitation counselor assigned to provide rehabilitation for that insured worker. No health care provider or his employee or agent shall be held civilly or criminally liable for disclosure of the medical information conveyed pursuant to this Section. This Paragraph shall not apply to examinations conducted by medical examiners appointed by the director pursuant to R.S. 23:1123.
* * *
(3) In addition to any other duty or responsibility provided by law, a case manager or vocational rehabilitation counselor who is a party to a verbal communication with the health care provider regarding an employee, as authorized by Paragraph (1) of this Subsection, shall, within five working days of the communication, mail a written summary of the communication and any work restrictions or modifications required for the employee's reasonable return to employment to the employee, his representative, and the health care provider. The summary shall be mailed by certified mail, return receipt requested, to the employee or his representative. It shall include a narration of any diagnosis or opinion given or discussed, any conclusions reached concerning the vocational rehabilitation plan, any return to work opportunities discussed consistent with the vocational rehabilitation plan, and the medical evaluation of the health care provider.
(4) Any medical information released in writing shall be furnished to the employee at no cost to him simultaneously with it being furnished to the employer, its insurer, agent, or representative. Any such records or information furnished to the employer or insurer or any other party pursuant to this Section shall be held confidential by them and the employer or insurer or any other party shall be liable to the employee for any actual damages sustained by him as a result of a breach of this confidence up to a maximum of one thousand dollars, plus all reasonable attorney fees necessary to recover such damages. An exception to this breach of confidentiality shall be any introduction or use of such information in a court of law, or before the Office of Workers' Compensation Administration or the Louisiana Workers' Compensation Second Injury Board.
[2] The WCJ's ruling was affirmed by this court in Hooker v. Wal-Mart Stores, Inc., supra.