948 So.2d 317 (2007)
George ADAMS and Michelle Adams, Individually and on Behalf of their Minor Children, Janelle Adams and Jamal Adams, Plaintiffs-Respondents
v.
HARRAH'S BOSSIER CITY INVESTMENT COMPANY, L.L.C., Defendant-Applicant.
No. 41,468-CW.
Court of Appeal of Louisiana, Second Circuit.
January 10, 2007.
Rehearing Denied February 22, 2007.
*318 Cook, Yancey, King & Galloway, by Gregg A. Wilkes, Shreveport, for Defendant/Applicant.
Joey W. Hendrix, Shreveport, Edward M. Campbell, Baton Rouge, for Plaintiffs/Respondents.
Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell, LLP, by Edwin H. Byrd, III, Shreveport, for Defendant/Respondent, City of Shreveport.
Before BROWN, STEWART & GASKINS, MOORE & LOLLEY, JJ.
STEWART, J.
This civil action arises from the arrest of Plaintiff George Adams at Defendant's, Harrah's Bossier City Investment Co., L.L.C., ("Harrah's"), casino on December 31, 2002. Based on a videotape recording of surveillance footage, Harrah's and the investigating police officers concluded that Mr. Adams had stolen a $500 chip at the craps table where he and his wife were playing. Mr. Adams was charged with felony theft. The district attorney's office ultimately dismissed this charge. Plaintiffs, George Adams and his wife, Michelle Adams, individually and on behalf of their children, Janelle Adams and Jamal Adams, sued Harrah's for damages allegedly arising out of the arrest. Plaintiffs later amended their petition to add the City of Shreveport as a defendant. Harrah's filed a motion for summary judgment, which the trial court denied. Harrah's then sought a writ of supervisory review, which this court granted to docket, and this appeal ensued. For the reasons stated herein, the trial court's judgment denying Harrah's motion for summary judgment is reversed.

FACTS
On December 31, 2002, George Adams was standing behind his wife at the craps table at Harrah's Casino when he reached around her toward the area on the table where the trays of chips were located. Mr. Adams asserted in his deposition that he took chips from his wife's chip tray, but Harrah's employees, watching the video surveillance, thought that he had taken a $500 chip from the tray of Harley Webb, who was standing next to Mr. Adams' wife. The alleged incident was recorded by security video, and Harrah's employees notified the Shreveport Police Department that a theft had occurred.
The police department dispatched three police officers to the scene; and, when they arrived, Mr. Adams was removed from the casino floor to a security office where he was advised of his Miranda rights and interviewed regarding the alleged theft. Two of the officers viewed the security video and concluded that Mr. *319 Adams had taken a chip from Mr. Webb. When they returned from viewing the video, they told Mr. Adams that he was under arrest, searched and handcuffed him and transported him to the Caddo Correctional Center. When Mr. Adams was searched, however, no $500 chip was found. Mr. Webb was unaware of the alleged theft, but told police officers that he would be willing to press charges against Mr. Adams. As previously stated, the district attorney subsequently dismissed the charges.
Plaintiffs filed this civil suit against Harrah's on May 14, 2004, alleging facts that could support claims for general negligence, intentional infliction of emotional distress and false arrest. On November 28, 2005, the trial court granted Plaintiffs leave to file their supplemental and amending petition adding the City of Shreveport as a defendant. On December 6, 2005, Harrah's filed a motion for summary judgment. Harrah's asserted that it could have no liability for false arrest by virtue of its good-faith reporting of the theft to the police officers. Harrah's focused on the fact that the Shreveport police officers conducted an investigation into the alleged theft by Mr. Adams and concluded that there was probable cause for arrest based on their investigation.
The trial court denied the motion for summary judgment after the matter was submitted on briefs without oral argument, finding that genuine issues of material facts existed that precluded summary judgment. At Harrah's request, the trial court delineated the questions of facts as:
I think the question of fact here is exactly who was the complainant in this matter, whether it was Harrah's or the victim. Also, I didn't see anything there as a sworn statement by the supposed victim in this action as to whether he missed the $500.00 chip that was supposedly stolen from him. It's going to be impossible for me to determine what the facts are in this case for purposes of a judgment without hearing him testify live and in open court or at least having their depositions for trial purposes.
The trial court also denied Plaintiffs' motion for continuance based on incomplete discovery, stating that a continuance was unnecessary given its denial of Harrah's motion for summary judgment. Thereafter, Plaintiffs again amended their petition, with leave of court, adding claims for malicious prosecution and defamation.

DISCUSSION
The standard of review for the grant or denial of a motion for summary judgment is de novo. Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002. Appellate courts review summary judgments de novo under the same criteria that govern a trial court's consideration of whether or not a summary judgment is appropriate(1) whether there exists a genuine issue of material fact and (2) whether or not the mover is entitled to judgment as a matter of law. Id. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The moving party must show that reasonable minds would inevitably conclude that judgment is warranted as a matter of law on the facts before this court. Id.
Further, in a motion for summary judgment, the burden of proof is on the movant. La. C.C.P. art. 966(C)(2). When the burden of proof at trial is on the non-movant, the burden on the movant at summary judgment is to demonstrate an absence of factual support for one or more *320 elements essential to the adverse party's claim. Id. If the non-movant then fails to produce sufficient factual support to show he can meet the evidentiary burden at trial, there is no genuine issue of material fact. In the case sub judice, the burden at trial is on Plaintiffs to prove their claims. As movant, Harrah's must only point out an absence of factual support, which they do here. The burden on this motion shifts, therefore, to Plaintiffs to establish the requisite evidentiary support on the claims they assert.
The supreme court recently decided a case factually similar to the instant case, Kennedy v. Sheriff of East Baton Rouge, 05-1418 (La.7/10/06), 935 So.2d 669.[1] In Kennedy, the plaintiff attempted to pay at a Jack-in-the Box drive-through window with a 1974 series $100 bill. The drive-through teller suspected that the bill was counterfeit and called the sheriff. The sheriff determined that the bill looked suspicious and arrested the defendant. At the substation, the sheriff verified the authenticity of the bill and released the defendant.
Addressing the malicious prosecution claim, the supreme court held that the independent actions and investigation of the sheriff broke the chain of causation between the Jack-in-the Box complaint and the defendant's arrest. This rational is not limited to Plaintiffs' malicious prosecution claim, but applies to all Plaintiffs' claims. See, e.g., Banks v. Brookshire Brothers, Inc., 93-1616 (La.App. 3d Cir.6/1/94), 640 So.2d 680 (malicious prosecution); Hughes v. Gulf International, 593 So.2d 776 (La.App. 4th Cir.1992) (false arrest), writ denied, 595 So.2d 658 (La.1992).
In the case sub judice, the Shreveport police conducted a similar independent investigation into the suspected theft. After the three police officers arrived, two of them viewed the video recording and arrived at a decision to arrest Mr. Adams independent of Harrah's. Plaintiffs argue that Harrah's possible involvement in commenting on the video distinguishes this case from Kennedy. In particular, Plaintiffs point out that the usual procedure, as described by one of the investigating police officers, is for Harrah's security to review the video tape with the police and point out what they believed was the criminal act. The officer was unable to recall if, in this particular instance, Harrah's security had such involvement. Even if they did, this involvement does not rise to such a level as to prevent the police investigation from being independent of Harrah's own suspicions. As such, the independent investigation by the police breaks any legal causation.
Plaintiffs further argue that Kennedy is distinguishable because, unlike the employees in Kennedy, Harrah's security force is composed of highly trained personnel amounting to a private police force. We find this distinction unpersuasive. The reasoning of the Kennedy court is not based on the qualifications of who made the complaint, but, instead, on subsequent and intervening law enforcement investigation. The police in the instant case made an independent investigation just as the Sheriff's Office did in Kennedy. This is the critical factor that prevents Plaintiffs from proving legal causation on any of their claims.
While discussing the defamation claims arising from the same facts, the Kennedy court focused on the need to encourage *321 honest and good faith reporting to law enforcement. We find this policy consideration equally applicable in evaluating any claim that arises from a private citizen making a report to law enforcement. The court considered that "[i]t would be self-defeating for society to impose civil liability on a citizen for inaccurately reporting criminal conduct with no intent to mislead. If the risks to the citizen are too high, a fertile field for criminal suppression will have disappeared." Kennedy, supra, citing Arellano v. Henley, 357 So.2d 846 (La. App. 4th Cir.1978). It further emphasized that, "vital to our system of justice is that there be the ability to communicate to police officers the alleged wrongful acts of others without fear of civil action for honest mistakes." Kennedy, supra.
The court recognized the need for balance between a person's individual interests and society's interest in crime prevention.
[The court's holding] strikes a necessary and appropriate balance between a person's interest in protecting his or her reputation and the need to encourage individuals to report suspected criminal activity to the proper authorities without fear of being exposed to civil liability for honest mistakes. Unless such protection is extended, fear of being exposed to civil liability could discourage individuals from alerting police to suspicious activity, thereby enabling criminals to escape detection and endangering other potential victims. Individuals who engage in behavior beneficial to society should not be penalized by facing exposure to civil liability for mistakes in judgment attributable to simple negligence.
Kennedy, supra. Notably, these policy considerations are only applicable in cases of honest and good-faith reporting.
Further, the Kennedy court expressly limited its holding to the facts before it. Those facts do not indicate anything but a good-faith report on the part of the Jack-in-the Box employees. The issue, therefore, becomes whether Harrah's was in good faith in making its complaint and who had the burden on summary judgment on that issue. As Plaintiffs have the burden of proof at trial on all their claims, they have the burden of proof at summary judgment to overcome Kennedy by establishing Harrah's lack of good faith. La. C.C.P. art. 966(C)(2). They fail to do so.
Attached to the motion for summary judgment were the depositions of Mr. Adams and two of the investigating officers, along with the police reports. The video at issue was not submitted. The only evidence arguably going to Harrah's lack of good faith is the fact that no $500 chip was found on Mr. Adams, that Harrah's could not explain the absence of the chip and that Mr. Webb did not miss the chip before being informed of the suspected theft. These facts, at most, show possible error on the part of Harrah's, but do not amount to a genuine fact issue on good faith. Plaintiffs failed to show a genuine issue of material fact to survive summary judgment. Accordingly, we reverse the trial court and grant Harrah's motion for summary judgment.
This holding is consistent with the policy considerations previously expressed by this court:
Reasonable efforts by a citizen toward [the] suppression of crime, even where a simple mistake exists, do not automatically impose civil liability . . ., if all the circumstances indicate the efforts were reasonable. The law should, and does, encourage citizens to report suspected criminal activity to the proper authorities.
Craig v. Carter, 30,625 (La.App.2d Cir.9/23/98), 718 So.2d 1068, writ denied, *322 98-2698 (La.12/18/98), 734 So.2d 636, quoting Sapp v. J.A. West Co., 352 So.2d 268 (La.App. 2d Cir.1977), writ denied, 353 So.2d 1337. The record shows that Harrah's did little more than report their suspicions, even if it was ultimately mistaken. Its behavior was reasonable given the circumstances.
Further, in attempting to avoid summary judgment, the Plaintiffs, in their second amending and supplemental petition, allege that Harrah's provided the police with an edited or doctored security tape. This bare allegation is unsupported by the record. Alternatively, Plaintiffs' counsel further responded at oral argument that its motion for continuance was improperly denied. Counsel, however, failed to assert denial of this motion as an assignment of error on appeal. It is, therefore, not before this court. See Uniform Rules, Courts of Appeal, Rule 2-12.4.
Our de novo review of the record reveals no genuine issue of material fact; and, therefore, we conclude that Harrah's is entitled to judgment as a matter of law. The facts, as supported by the record, entitle Harrah's to summary judgment dismissing any claims against it. In particular, Plaintiffs cannot establish the requisite causation between Harrah's actions and Mr. Adams' arrest.

CONCLUSION
For the foregoing reasons, the trial court erred in denying Harrah's motion for summary judgment. Accordingly, we reverse the denial of summary judgment. Judgment is hereby rendered in favor of Harrah's, dismissing Plaintiffs' claims with prejudice. Costs are assessed to Plaintiffs.
REVERSED AND RENDERED.
BROWN, C.J., dissents with written reasons.
BROWN, Chief Judge, dissenting.
In its motion for summary judgment, Harrah's does not contend that George Adams was guilty of any crime, rather Harrah's interposes the police as a shield against liability, citing Kennedy v. Sheriff of East Baton Rouge, 05-1418 (La.07/10/06), 935 So.2d 669. The court in Kennedy, however, held that "[G]iven these facts, which were not controverted by plaintiff, it is clear that any chain of causation regarding plaintiff's subsequent detention was broken (by an independent police investigation and action)." Given the facts in the case at bar, Harrah's bare profession by its attorney of good faith was controverted by plaintiff's submissions in opposition to the MSJ and the trial court correctly found that there existed material fact questions concerning reckless disregard and abuse by Harrah's.
In Craig v. Carter, 30,625 (La.App.2d Cir.09/23/98), 718 So.2d 1068, writ denied, 98-2698 (La.12/18/98), 734 So.2d 636, this court rejected defendant's contention that the plaintiff's arrest stemmed solely from a determination by the police rather than any request by Brookshire's store employees. After acknowledging the grant of summary judgment in Banks v. Brookshire Bros. Inc., 93-1616 (La.App. 3rd Cir.06/01/94), 640 So.2d 680, in which store employees merely reported their observations to police officers who then conducted their own investigation, we stated that the record in Craig showed broad reliance on the facts provided by the store employees and only limited independent inquiry by the police. Thus, this court concluded in Craig that the plaintiff's arrest occurred at the instigation of the grocery store employees.
In the case at bar, the facts, like those of Craig, are equally distinguishable from *323 those of Banks and Kennedy. The majority opinion states that plaintiff, George Adams, was arrested, jailed, and charged "based on a video tape recording of surveillance footage." This video, however, was not submitted with Harrah's MSJ nor did Harrah's submit any affidavits or depositions based on personal knowledge of casino employees who made the decision that Adams had stolen a $500 chip from Harley Webb. They stuck to this decision in face of Webb's denial of any theft and even after a search of Adams by these casino security officers failed to find a $500 chip. Subsequently, the charge was dismissed by the Caddo Parish District Attorney.
In support of its summary judgment motion, Harrah's presented the depositions of George Adams and two of the three responding Shreveport Police Department officers. As stated, neither the surveillance videotape nor affidavits/depositions of Harrah's security officers were provided. In fact, the Harrah's security officers were never identified. In response to Harrah's motion for summary judgment, Adams attached his deposition, the bill of information charging him with felony theft, and the dismissal of prosecution filed by the state.
As this record stands, the submissions in support of and in opposition to the MSJ show that there was no victim and no crime. SPD Corporal Laura Sorrells was the arresting officer, and she wrote the incident report. In her deposition, she did not fully remember the incident and had to refer to her report. When asked "but do you remember actually being there and doing these things indicated in the report?" Cpl. Sorrells responded:
A. . . . no, I, you know, other than going by my report, no. I've made a bunch of arrests since then, especially at the boat, so, they all get mixed together.
Corporal Sorrells' report lists Harrah's as the complainant and states that the alleged victim, Harley Webb, was unaware of any theft. Contrary to the majority opinion, nowhere in this record does anyone claim that Webb ever said he was a victim of theft. In particular, in her deposition, Cpl. Sorrels stated:
Q. And Mr. Webb said he didn't know that anyone had taken his chip; right?
A. Correct.
Q. Did y'all ask him any other questions, like had he counted his money? Was . . .
A. No.
Q. Was he, in fact, $500 short?
A. I don't recall if we ever did or did not.
Q. So, really, he didn't know that anybody had taken anything from him; is that correct?
A. That's what he stated; yeah.
Q. And then Harrah's security told y'all that they had a surveillance tape and that they observed a theft on that surveillance tape?
A. Correct.
(Emphasis added)
Corporal Sorrells never viewed the video and never identified any casino informant. There is no indication of whether that casino informant was simply repeating what he/she was told or had personal knowledge. According to Cpl. Sorrells' report, Harley Webb had been taken from the gaming area by casino security officers to an interrogation room where he told Cpl. Sorrells that he was unaware of any theft. This denial was witnessed by casino officers. Obviously, Webb had been told of the alleged theft and would have checked his cachet of chips. As noted by the trial court, "I didn't see anything there (such) as a sworn statement by the supposed *324 victim (Webb) in this action as to whether he missed the $500 chip that was supposedly stolen from him." Further, corroborating that no theft occurred is the dismissal of prosecution and the fact that when searched by Harrah's security officers, Adams had on his person only $108 in chips, the largest being a $25 piece. The two SPD officers that gave depositions both stated that they had no recollection of searching Adams. In his deposition, Adams stated that he was searched by Harrah's security officers. Again, no one controverted Adams' statement. Specifically, Adams said that there were always three Harrah's security officers present and that:
. . . the Harrah's security said, oh, you got chips. Yeah, I got, did you check me, you know, yeah. So they pulled them out of my pocket and I had about $108 of chips in my pockets. So they searched me after I asked them, let me give my wife my chips.
Lack of good faith never depended, as asserted by the majority, on whether a $500 chip was found on Adams; rather, it depended on what Harrah's security officers saw initially and learned thereafter to justify their pursuit of criminal charges against Adams. No affidavits or depositions from these security officers were furnished with Harrah's summary judgment motion, nor was the videotape of what they saw provided. Thus, this record provides no professions of good faith. It is also clear that the SPD officers, who were patrolling downtown on bicycles, showed up when called by Harrah's, and as stated in their depositions, relied on the information given by Harrah's security officers. Corporal Sorrells talked to only two people, Webb, who said he suffered no loss and Adams, who explained that he reached across his wife and took a chip from her tray. There is no identified Harrah's employee from whom any statement was taken.
Harrah's was listed by the police as the complainant and in so far as this arrest is concerned, the relationship between Harrah's and the police is problematic. After speaking with Harley Webb, Cpl. Sorrells wrote that "Harrah's security approached (Adams) and asked him to accompany them." At this time, only Harrah's security personnel had seen the video from the surveillance camera. Corporal Sorrells interviewed Adams, who was cooperative, telling her that his wife had a place at the craps table and that he reached around her and took a $25 chip from her tray and put it in his pocket. This same story was repeated in his deposition.
Corporal Sorrells did not search Adams and as previously stated, none of the SPD officers admitted to searching Adams. Adams said that he was searched by Harrah's security. This statement is uncontroverted and it demonstrates the extent to which this arrest was controlled by Harrah's. Even after the incident, the surveillance camera continued to film Adams, but the record is silent as to what this recording showed.
Corporal Sorrells did not recall whether Harrah's security took Adams out of the casino and to a police van; however, she stated that this was the standard procedure. Corporal Sorrells never viewed the videotape.
Officer Jimmy Ray did view the videotape with Harrah's security personnel. He had no specific memory of what he saw but explained that the standard procedure was that Harrah's security officers would point out the alleged crime. "[T]hat is the standard of what they (Harrah's) do. Otherwise we don't know what we are looking for, you know." (Emphasis added). In his deposition, Officer Ray further responded as follows:

*325 Q. Is it (the videotape) queued up to a certain spot when you take a look at the tape?
A. I have no idea.
. . .
Q. Would they point out people to you who they believe were perpetrating a crime?
A. Yes, they would.
Q. So in order to review that tape and determine who the suspect is, they're going to show you the videotape and say, here is the suspect reaching across and taking a chip; is that right?
A. Uh-huh.
Q. Do you recall if they run the tape back and forth several times?
A. I have no idea.
. . .
Q. Did they slow it down and put it on slow motion for you?
A. Have no idea.
Officer Ray's participation was limited to reading Adams his Miranda rights and being taken by Harrah's security personnel to view the film. He specifically stated that he did not make the arrest or determine probable cause. When asked if the arrest "was based on the investigation that the Shreveport Police Officers did," Ray responded, "And the evidence that was provided by Harrah's." All you can possibly glean from Officer Ray's testimony is that Adams reached around his wife and took a chip off her tray.
The third responding officer, Steven Lowery, neither was deposed nor did he prepare an affidavit. Officer Lowery did write a one paragraph report; however, a police report not accompanied by an affidavit or a deposition of the officer is not considered as competent evidence in a summary judgment proceeding. La. C.C.P. art. 967; Encalade v. United Insurance Company of America, 99-0085 (La. App. 4th Cir.06/02/99) 735 So.2d 954. I note that the report did say that Adams reached around a woman and took a chip, and then placed the chip in his pocket. Despite the fact that Adams was continuously under surveillance, no other video was provided to the SPD officers.
The Adams family, residents of Carrolton, Texas, had traveled to Shreveport from Texas with their two teenaged children and were staying at the Horseshoe Casino Hotel for the holidays. This incident occurred in the early afternoon of December 31, 2002. Because of the holidays and the difficulty in finding a judge to set bail, Adams was in jail for two days and nights. Adams, who was a 40-year-old African-American, had no prior criminal record and worked as a youth counselor. He had played college football at the University of Kentucky and was a first round draft pick in the NFL. Adams played seven years as a professional in the NFL with the New York Giants and New England Patriots. Adams was retired from the NFL and disabled.
Summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice. Jones v. Estate of Santiago, 03-1424 (La.04/14/04), 870 So.2d 1002; Hooker v. Wal-Mart Stores, Inc., 38,350 (La.App.2d Cir.04/07/04), 870 So.2d 1131, writ denied, 04-1420 (La.09/24/04), 882 So.2d 1142. One reason is that these subjective facts call for credibility evaluations and the weighing of testimony. Hooker, supra; Oaks v. Dupuy, 32,070 (La.App.2d Cir.08/18/99), 740 So.2d 263, writ not considered, 99-2729 (La.11/24/99), 750 So.2d 993. Furthermore, the circumstantial evidence usually necessary for proof of motive or intent requires the trier-of-fact to choose from competing inferences, a task not appropriate for a summary judgment ruling. Hooker, supra.
*326 In Kennedy, supra, our supreme court recognized that the chain of causation for malicious prosecution can be broken when law enforcement conducts an independent investigation. In Kennedy, the plaintiff attempted to pay at a Jack-in-the-Box drive-thru window with a $100 bill. The drive-thru teller suspected that the bill was counterfeit and called the authorities. The deputy sheriff determined that the bill looked suspicious and took the defendant to a substation to further examine the $100 bill. The deputy verified the authenticity of the bill and immediately released the defendant. On the malicious prosecution claim, the supreme court held that the independent actions and investigation of the sheriff broke the chain of causation between the Jack-in-the-Box call to police and the defendant's arrest.
Unlike Jack-in-the-Box, Harrah's Casino maintained a large professional security force and monitored all gaming activity. That the majority opinion would impose no greater scrutiny on such a professional security force than a minimum wage worker in a fast food drive-thru is difficult to comprehend. Harrah's and the police also had an understanding or standard operating procedure that Harrah's security force would handle events in the casino; however, there is no specification in this record of what the standard procedure was except that such a procedure existed.
In this case, Harrah's security took Webb off the floor and heard him say that he knew of no theft; Adams was also taken off the floor and into a security room by Harrah's security officers. It was Harrah's security who searched Adams and failed to find the alleged stolen chip; it was also Harrah's security personnel who refused to let Adams see the video and explain his actions. When Adams was arrested, he was taken out of Harrah's by casino security officers. Corporal Sorrells, the arresting officer, did not view the video and Officer Ray, who did see the video, had no specific memory of what he watched. Officer Ray explained that it was Harrah's security personnel who told him that the tape purportedly showed the theft. Officer Lowery's report of what he saw on the video is not admissible but arguably supports what Adams said he did, i.e., reached around or across his wife to take a chip from her tray. How anyone could distinguish a $500 chip from a $25 chip or what tray belonged to who is unknown. If the camera was sophisticated enough to distinguish by color or numbers the chips, then it would clearly have shown who did what.
From the motion for summary judgment and attachments it appears that the SPD officers relied on the casino security force in making this arrest. One reasonable interpretation of the limited record is that Harrah's security force instigated the arrest and that they initially acted recklessly and without a reasonable suspicion, that is, what they saw was Adams reach around his wife and take a chip from her tray. Thereafter, they searched Adams and found no stolen chip but continued to push for his arrest. There is no fixed test to measure acts constituting a reckless instigation of an arrest. Each case depends upon its own particular facts established by both direct and circumstantial evidence. From what has been presented, as well as what has not been shown, plaintiff has a sustainable case and summary judgment was properly denied.
I also agree with the trial court that this summary judgment motion was premature and that more discovery is in order.[1]

*327 APPLICATION FOR REHEARING
Before BROWN, STEWART, GASKINS, MOORE and LOLLEY, JJ.
Rehearing denied.
BROWN, C.J., would grant rehearing.
NOTES
[1] Kennedy was released after the trial court's ruling, so the court did not have the benefit of its guidance.
[1] In a factually similar case out of Missouri, Blue v. Harrah's North Kansas City, LLC, 170 S.W.3d 466 (Mo.App. W.D.2005), a casino patron was detained by security and arrested by a gaming commission officer under suspicion of stealing gambling chips. Later, the patron sued the casino and the officer for false arrest; the officer was granted summary judgment, but Harrah's was found liable for the false arrest. Harrah's filed a cross appeal claiming that the trial court erred in denying its motion for directed verdict and for JNOV on liability. As in Louisiana, the elements of false arrest were restraint of the plaintiff against his will and the unlawfulness of the restraint. The court noted that a defendant may be liable for false arrest even if he did not actually confine the plaintiff, if the defendant instigated, caused, or procured the arrest; however, merely providing information to the police is not sufficient to find that a defendant caused the arrest. In considering Harrah's cross appeal, the court noted that a defendant is entitled to have a motion for directed verdict or JNOV granted only if the plaintiff fails to make a sustainable case. To make a sustainable case the plaintiff must present substantial evidence for the essential elements of liability (i.e., evidence, which, if true has probative force on the issues, and from which a trier of fact can reasonably decide the case).

In Blue, Harrah's claimed that it could not be liable for bringing the theft of the chip to the officer's attention and for then following his directions. Harrah's claimed that all they did was report the theft to the officer once the surveillance department confirmed that the theft actually occurred and that Harrah's was simply cooperating with the officer during the course of the investigation by stopping the plaintiff on the officer's orders and providing handcuffs when the officer requested them.
The court noted that because the question of denial of motion for JNOV concerned only whether the plaintiff had made a sustainable case that Harrah's instigated the arrest, the court would not actually weigh the evidence that the plaintiff presented. The plaintiff presented evidence that Harrah's told the officer about the theft, showed him the videotape of the theft, and searched for anyone who resembled the thief. Harrah's employees followed the officer's directions which ultimately resulted in the arrest. The court said:
Although some of this evidence is in Harrah's favor, some of it is not. This creates two possible interpretations about what happened; so a sustainable case was made, and it was for the jury to decide whom to believe.