# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-30456

United States Court of Appeals
Fifth Circuit

**FILED**

April 16, 2020

Lyle W. Cayce
Clerk

KYLE D. PIKALUK,

      Plaintiff - Appellant

v.

HORSESHOE ENTERTAINMENT, L.P., doing business as Horseshoe Hotel & Casino; STEVEN JONES; ROB BROWN; JASON WILLIAMS; FEDERICO M. ARENDS, III; JAMES LAFLEUR,

      Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:18-CV-215

Before ELROD, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Kyle Pikaluk appeals the district court's grant of summary judgment on his 42 U.S.C. § 1983 and Louisiana state law claims. For the reasons set forth below, we REVERSE the district court's judgment in part, AFFIRM in part, and REMAND for further proceedings consistent herewith.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.  Background[1]

Pikaluk is a skilled blackjack player whom some casinos consider to be an "advantage player."  An advantage player utilizes legitimate techniques to gain an edge while playing casino games like blackjack.  The term does not refer to a player who cheats or uses illegal methods in playing the games.

In June 2016, Caesars Entertainment Corporation ("Caesars") contends that it permanently banned Pikaluk from all Caesars properties based on its identification of Pikaluk as an advantage player.  Caesars contends it sent a letter to that effect, but Pikaluk denies receiving any notice of the ban, and we conclude that this is a disputed fact issue.

Horseshoe Hotel & Casino ("Horseshoe") is a licensed gaming establishment and an affiliate of Caesars.  In March 2017, Pikaluk played blackjack at Horseshoe in Bossier City, Louisiana.  He won over $30,000.  In order to cash out the winnings, Horseshoe required Pikaluk's identification at the register, and WinNet, Horseshoe's management software, displayed a message stating, "GUEST IS EVICTED COMPANYWIDE.  CONTACT SECURITY."

Horseshoe employees then refused to cash in Pikaluk's chips and called Bossier City police.  Officers Joseph Thomerson, Jordan Johnson, and Donald Razinsky (the "Officers") were dispatched to the scene.  When the Officers arrived, Horseshoe security manager Steven Jones told Thomerson that Pikaluk had been banned from "Horseshoe and all their properties." Jones also told Thomerson that Pikaluk "knew he had been banned, that he had certified letters that he had been banned."  Thomerson then arrested Pikaluk for criminal trespass.  The charges were eventually dismissed.

---

[1] The underlying facts relevant to the summary judgment inquiry are largely undisputed, but where they are disputed, we provide the facts in the light most favorable to the nonmovant.  *See Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645, 650 (5th Cir. 2018).

No. 19-30456

Pikaluk sued Horseshoe and several of its employees (the "Horseshoe Defendants") under 42 U.S.C. § 1983 for violations of his constitutional rights stemming from his arrest. He also asserted state-law claims for malicious prosecution, negligence, violation of the Louisiana Unfair Trade Practices Act ("LUTPA"), and conversion.[2] Horseshoe moved for summary judgment on all claims. The district court granted the motion. This appeal followed.

## II.    Standard of Review

"We review a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## III.    Discussion

### A. Section 1983

Pikaluk appeals the district court's grant of summary judgment on his § 1983 claim. Section 1983 provides that "every person who, under color of any [law]," deprives another of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. "[F]or a plaintiff to state a viable claim under § 1983 against any private defendant," such as Horseshoe, "the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law." *Morris v. Dillard Dep't Stores, Inc.*,

---

[2] Pikaluk also asserted several other state-law claims that he does not discuss on appeal. He has thus abandoned any argument relating to those claims. *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in [his] *initial* brief on appeal.").

277 F.3d 743, 747 (5th Cir. 2001).  There are various tests for determining that a private actor can be treated as a state actor for § 1983 purposes.  Relevant here are the nexus test and the joint action test.  The nexus test "considers whether the State has inserted 'itself into a position of interdependence with the [private actor, such] that it was a joint participant in the enterprise.'" *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (alteration in original) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 435, 357–58 (1974)). "[T]he focus of the inquiry into whether a private actor can be subjected to constitutional liability is whether 'such a close nexus between the State and the challenged action' exists 'that seemingly private behavior may be fairly treated as that of the State itself.'"  *Morris*, 277 F.3d at 747–48 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

The joint action test asks whether private actors were "willful participant[s] in joint action with the State or its agents."  *Cornish*, 402 F.3d at 549 (alteration in original) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).  To maintain a claim that a private citizen is liable under § 1983 based on joint action with state officials, Pikaluk

> must allege facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents.

*Polacek v. Kemper County*, 739 F. Supp. 2d 948, 952 (S.D. Miss. 2010).  A meeting of the minds does not occur merely by calling upon law enforcement, even when the information furnished is used to effect an arrest.  *Guillot v. Coastal Commerce Bank*, No. 10-2092, 2010 WL 4812959, at *3 (E.D. La. Nov. 19, 2010).

The district court granted summary judgment based on its conclusion that the Officers conducted an "independent investigation" after receiving the call from Horseshoe. We disagree. As we will explain, the lack of independent investigation is a significant factor in Pikaluk's malicious prosecution claim. But even without evidence of an independent investigation, summary judgment on Pikaluk's § 1983 claim was still proper because of the lack of evidence of any "interdependence" or "meeting of the minds" between the state officials and the Horseshoe Defendants. We thus affirm the district court's grant of summary judgment on Pikaluk's § 1983 claim.

## B. Malicious Prosecution

Pikaluk also argues that the district court erred in granting summary judgment on his Louisiana malicious prosecution claim. We agree.

A successful malicious prosecution claim requires a showing of six elements:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff.

*Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 452 (La. 1987). Such actions "have never been favored" by Louisiana courts, so in order to prevail, "a clear case must be established, where the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent." *Johnson v. Pearce*, 313 So. 2d 812, 816 (La. 1975) (citation and internal quotation marks omitted).

Importantly, "[a]n independent investigation by law enforcement of a complaint made by a citizen may break the chain of causation between the

No. 19-30456

complaint and the ultimate commencement of a criminal proceeding." *LeBlanc v. Pynes*, 69 So. 3d 1273, 1281 (La. Ct. App. 2011). But "there are cases in which there may not have been enough of an intervening police investigation to break the chain of causation." *Id.*

The district court concluded that no genuine factual dispute existed with respect to legal causation because the Officers conducted an independent investigation before they arrested Pikaluk. In so holding, the district court relied on *Adams v. Harrah's Bossier City Investment Co.*, 948 So. 2d 317 (La. Ct. App. 2007). In that case, plaintiff Adams was at a casino when casino employees suspected, based on surveillance video, that he had stolen a $500 chip. *Id.* at 318. The employees notified law enforcement of the suspected theft. *Id.* The police department then sent several police officers to the casino. *Id.* When the officers arrived, "Mr. Adams was removed from the casino floor to a security office where he was advised of his *Miranda* rights and interviewed regarding the alleged theft. Two of the officers viewed the security video and concluded that Mr. Adams had taken a chip from Mr. Webb." *Id.* at 318–19. Only after the officers viewed the video did they arrest Adams. *Id.* at 319.

Adams sued the casino for malicious prosecution. *Id.* In affirming the trial court's grant of summary judgment for the casino, the court of appeals held that the officers' independent investigation "broke the chain of causation" for Adams's malicious prosecution claim. *Id.* at 320.

But *Adams* is distinguishable. There, the officers questioned Adams himself regarding his alleged theft. *Id.* at 318. Moreover, two officers independently viewed the casino's surveillance footage and concluded that Adams had indeed stolen the chip. *Id.* Only then did the officers arrest Adams. *Id.*

No such investigation occurred here. The relevant official—Thomerson —relied solely on Jones's statements and did not recall relying on "any other

6

information" aside from Jones's statements in deciding to arrest Pikaluk.[3] Indeed, he did not even ask to review the computer information that prompted the call to the police (if he had, he would have seen that it had no indication of notice to Pikaluk). Thomerson "didn't question Mr. Jones because [he] didn't have any reason not to believe him." Indeed, when asked to describe "everything [he] did to investigate the charges for the claims against Mr. Pikaluk before he was arrested," Thomerson responded: "We got [Jones's] statements." Thomerson also recalled that when Pikaluk learned why the Officers were there, he stated that he "didn't know" that he was banned from the property. But the Officers did not even read Pikaluk his *Miranda*[4] rights because they did not intend to question him on the matter.

Thus, this case is more like *LeBlanc*, in which a detective "testified that the arrest and charges against the Plaintiffs were based solely on the information [the private actor] provided him." 69 So. 3d at 1281. The court held that the detective's "testimony did not indicate a separate, independent investigation to such a degree that the chain of causation [was] broken." *Id.* So too here. The Officers' reliance on Jones's statements was not "enough of an intervening police investigation to break the chain of causation." *See id.*

Moreover, genuine factual disputes exist on the remaining elements of Pikaluk's malicious prosecution claim. The Horseshoe Defendants contest only two elements of Pikaluk's claim. We address each in turn.

The Horseshoe Defendants first claim that they had probable cause to suspect Pikaluk of trespassing based on the WinNet message. "Probable cause . . . exists when facts and circumstances within the knowledge of the arresting officer and of which he has reasonable and trustworthy information

---

[3] Thomerson also asked for, but never saw, the purported ban letters.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

7

are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense." *Miller*, 511 So. 2d at 452. "Probable cause does not depend merely upon the actual facts in the case, but upon the defendant's honest belief of the facts when making charges against the plaintiff." *Plessy v. Hayes Motor Co.*, 742 So.2d 934, 939 (La. Ct. App. 1999). "The crucial determination is whether the defendant had an honest and reasonable belief in the guilt of the plaintiff at the time charges were pressed." *Id.*

Here, Pikaluk was charged with criminal trespass. It is unclear under which ordinance Pikaluk was charged. Pikaluk alleges that he was charged under Bossier City Municipal Code § 38-133 (the "City Ordinance"). But he refers to Bossier Parish Municipal Code § 78-191 (the "Parish Ordinance") in support of this assertion.

An individual who intentionally enters another's property commits trespass under the City Ordinance if "he knows . . . or reasonably should know his entry is unauthorized." BOSSIER CITY, LA. MUN. CODE § 38-133. In contrast, a person commits trespass under the Parish Ordinance only if he has received "notice" that his entry on the property is forbidden. BOSSIER PAR., LA. MUN. CODE § 78-191. As relevant here, the Parish Ordinance defines "notice" as "written or oral communication of the owner or someone with apparent authority to act for the owner." *Id.*

Regardless of which ordinance applied, WinNet did not show that Pikaluk had received notice of his ban or that he otherwise knew or reasonably should have known of the ban. Pikaluk denied both notice and knowledge. The basis of Jones's statement that Pikaluk had been sent letters informing him of the ban is unclear. Genuine fact issues thus exist regarding whether the Horseshoe Defendants had probable cause to believe that Pikaluk was criminally trespassing.

No. 19-30456

The Horseshoe Defendants also argue that Pikaluk has not presented sufficient evidence of malice to survive summary judgment. "Malice is found when the defendant uses prosecution to obtain a private advantage, such as to extort money, to collect a debt, to recover property, or to compel performance of a contract." *Plessy*, 742 So. 2d at 940. Malice will also "be inferred when there is an absence of probable cause." *Id.*

In *Plessy*, the defendant car dealer had reported a vehicle as stolen after selling it to Plessy "to obtain a private advantage, particularly to recover possession of the vehicle and to insure that it would not lose money through its dealings with Plessy." *Id.* The court held that such evidence supported a finding of malice. *Id.*

Here, as Pikaluk was being escorted out of the casino, Horseshoe employee Rob Brown told Thomerson that Pikaluk was "a trespasser and at this moment he has $31,000 of my money in his front pocket." Based on this statement and the potential lack of probable cause for Pikaluk's arrest, a jury could reasonably conclude that Horseshoe acted with malice. Indeed, the Horseshoe Defendants do not argue this point. They state only that they "reasonably relied" on the WinNet message and that such reliance "in and of itself, proves no Defendant acted with actual malice."

We disagree and conclude that genuine factual disputes exist regarding Pikaluk's malicious prosecution claim. We thus reverse the district court's grant of summary judgment on that claim.

## C. Negligence and Gross Negligence

Pikaluk also claims that the district court wrongly granted summary judgment on his negligence and gross negligence claims. We agree.

Horseshoe's potential liability is governed by the Louisiana Civil Code. *See* LA. CIVIL CODE ANN. arts. 2315, 2316. Louisiana courts assessing such

9

claims conduct a "duty-risk analysis." *Pitre v. La. Tech Univ.*, 673 So. 2d 585, 589 (La. 1996). Courts applying the duty-risk analysis examine "the conduct of each individual party and the peculiar circumstances of each case." *Id.* In so doing, courts make the following inquiries:

> (1) Was the conduct of which the plaintiff complains a cause-in-fact of the resulting harm?
>
> (2) What, if any, duties were owed by the respective parties?
>
> (3) Whether the requisite duties were breached?
>
> (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
>
> (5) Were actual damages sustained?

*Id.* at 589–90.

The district court held only that the Officers' "independent police investigation" broke any chain of legal causation such that Pikaluk could not make out a negligence or gross negligence claim. It did not address the remaining elements of Pikaluk's claim. But we have already concluded that the Officers did not conduct an independent investigation. We conclude that the other elements should be considered by the district court in the first instance. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). We thus reverse the district court's grant of summary judgment and remand for consideration of the remaining elements of Pikaluk's claim.

## D. LUTPA

Pikaluk next claims that the district court wrongly granted summary judgment on his LUTPA claim. We agree.

LUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. ANN. § 51:14059(A).  Courts applying LUTPA determine whether particular actions are unfair trade practices "on a case-by-case basis." *IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018) (citation and internal quotation marks omitted).  But a challenged action will qualify as "unfair" under LUTPA only if it "offends established public policy and is immoral, unethical, oppressive or unscrupulous." *Id.* (citation and internal quotation marks omitted).

The district court concluded that Horseshoe's refusal to cash Pikaluk's chips did not fall "within the narrowly defined prohibited practices envisioned by [LUTPA]."  It relied on *Hadassa Investment Security Nigeria, Ltd. v. Swiftships Shipbuilders, LLC*, No. 13-2795, 2016 WL 156264, at *4 (W.D. La. Jan. 12, 2016), to conclude that Horseshoe had "at a minimum 'a decent argument' for refusing to cash Pikaluk's chips, that is, he was on the premises and gambling despite a companywide ban."  But the district court "did not assess a 'critical factor' in any LUTPA claim: 'the defendant's motivation.'" *Broussard*, 907 F.3d at 840 (quoting *Balthazar v. Hensley R. Lee Contracting, Inc.*, 214 So. 3d 1032, 1041 (La. Ct. App. 2017)).  Horseshoe's "motivation and intent are critical factors in determining whether [its] conduct was unfair or deceptive." *Balthazar*, 214 So. 3d at 1043.

Pikaluk presented evidence that Horseshoe refused to cash his chips and had him arrested with very little basis.  Viewing that evidence in the light most favorable to Pikaluk, and given the district court's failure to assess Horseshoe's motivation, we cannot determine whether, as a matter of law, Horseshoe's actions were "unfair or deceptive" under LUTPA.  *See* LA. REV. STAT. ANN. § 51:1405(A).  We thus reverse the district court's grant of summary judgment on this claim.

## E. Conversion

Finally, Pikaluk challenges the district court's grant of summary judgment on his conversion claim based on Horseshoe's failure to cash his chips.   We conclude that the district court erred in granting summary judgment.

Conversion is "any wrongful exercise or assumption of authority over another's goods, depriving him of . . . possession, permanently or for an indefinite time." *An Erny Girl, L.L.C. v. BCNO 4 L.L.C.*, 257 So. 3d 212, 222 (La. Ct. App. 2018) (citation and internal quotation marks omitted).

The district court rejected Pikaluk's conversion claim based solely on its conclusion that Horseshoe was shielded from liability by LA. REV. STAT. ANN. § 27:27.4 (the "Exclusion Statute").  The Exclusion Statute provides:

> Any licensee or casino gaming operator licensed pursuant to the provisions of this Title, and any employee of a licensee or casino gaming operator shall not be liable for any monetary damages or any other remedy in any judicial proceeding as a result of the exclusion or removal of any person for any reason, except race, color, creed, national origin, sex, or disability . . . .

*Id.* § 27:27.4(B).  The statute relates only to a casino's decision to "exclu[de] or remov[e]" patrons from their premises. *See id.*  It is silent as to whether casinos may require patrons to forfeit tens of thousands of dollars, including money they paid to buy chips in the first place, as a result of their exclusion.  *Id.*

The district court did not cite any Louisiana authority interpreting or applying the Exclusion Statute.  The Horseshoe Defendants rely only on facially distinguishable cases.  In *Dockery v. Sam's Town Casino*, the defendant casino excluded a patron from its premises after she filed a complaint with gaming authorities.  No. 06-1293, 2007 WL 3023928, at *1 (W.D. La. Oct. 12, 2007).  Relying on the Exclusion Statute, the court held that the casino was

not liable for its lawful exclusion of the plaintiff.  *Id.* at *4.  Similarly, in *Herring v. Jazz Casino Co.*, a casino had a patron removed after she allegedly became inebriated and disruptive.  No. 2010-CA-0211, 2010 WL 8972463, at *1 (La. Ct. App. 2010).  The court held that the Exclusion Statute protected the casino from monetary damages.  *Id.* at *4.  In neither case did the casino refuse to cash the excluded patron's chips.

It makes sense that no case law supports the Horseshoe Defendants' expansive reading of the Exclusion Statute.  Otherwise, casinos would have broad immunity for all manner of behavior so long as it was remotely related to the "exclusion or removal" of patrons.  *See* LA. REV. STAT. ANN. § 27:27.4(B).  Moreover, such a reading would conflict with Louisiana gaming laws in a case such as this one, in which the casino refused to redeem a patron's chips before removing him.  *See* 42 LA. ADMIN. CODE § 4309(A)(3), (C) (requiring casino operators to "promptly redeem" their chips from patrons).  We decline to adopt such a tenuous reading of the Exclusion Statute.

The Exclusion Statute does not shield the Horseshoe Defendants from liability for Pikaluk's conversion claim.  Neither the district court nor the Horseshoe Defendants have provided any other basis for summary judgment.  Because the district court did not analyze the substance of Pikaluk's conversion claim, we reverse the district court's grant of summary judgment and remand for consideration of the merits.  We need not, and therefore do not, decide at this point whether the conversion claim should yield a different result for the chips Pikaluk purchased versus the chips he won.  We conclude the district court should assess that in the first instance.  *See Singleton*, 428 U.S. at 120.

No. 19-30456

## IV.    Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment as to the § 1983 claim, REVERSE the district court's judgment as to the remaining claims, and REMAND for proceedings consistent with this opinion.